UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SAMUEL McKENZIE,

                      Plaintiff(s),                   **REPORT AND**
                                                                **RECOMMENDATION**
          -against-                              CV 09-606 (SJF) (WDW)

THE ESTEE LAUDER COMPANIES, INC.,
                       Defendant(s).
----------------------------------------------------------X

**WILLIAM D. WALL, United States Magistrate Judge:**

       Before the court on referral from District Judge Feuerstein is the defendant's motion for summary judgment. DE[21-26, 28 & 31]. The motion is opposed by the pro se plaintiff. DE[27, 34, 35]. For the reasons set forth herein, I recommend that the motion be GRANTED.

## PROCEDURAL BACKGROUND

       Plaintiff Samuel McKenzie was employed by defendant Estee Lauder until March 8, 2007, when his employment was terminated. On March 20, 2007, he filed a verified complaint with the NYSDHR, alleging retaliation and unlawful discriminatory practices in employment by the defendant. *See* Affidavit of Anthony Tursi, DE[25], ¶14, Ex. K. On May 23, 2008, the NYSDHR dismissed that complaint, ruling that there was no probable cause to believe that Estee Lauder had engaged in the unlawful discriminatory practice complained of. *Id.* On November 13, 2008, the EEOC adopted the NYSDHR findings and issued a right to sue letter. *Id.* On February 9, 2009, McKenzie filed the complaint in this action, making claims under Title VII, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA). DE[1].

       The defendant moved for summary judgment on July 26, 2010, claiming that there are no genuine issues of material fact regarding plaintiff's claims and that they must be dismissed as a

matter of law. The defendant satisfied its obligation under Local Civil Rule 56.2, and served a Notice to the Pro Se Plaintiff regarding summary judgment. DE[23]. The motion was referred to me on July 28, 2010, and a review of the papers revealed that the plaintiff had not filed a Rule 56.1 counterstatement. He was given an opportunity to do so, and filed his counterstatement on August 27, 2010. DE[34]. He also filed a supplementary affidavit in opposition to the motion. DE[35], which the defendant has asked the court to exclude as non-permitted sur-reply. DE[37]. While the defendant is correct that the affidavit amounts to a sur-reply, I have reviewed it and have found that it raises no material issues that were not already addressed by the defendant.

## FACTUAL BACKGROUND

The parties agree that McKenzie began full time work as a flex material handler at the defendant's facility in Melville in July 2002, when he was 55 years old. Def. 56.1 Stmt., ¶2.[1] "Flex" material handlers work on an as-needed basis, rather than a set weekly schedule. *Id.*, ¶3. The defendant states that it is crucial for the smooth operation of production, staging and shipping functions that material handlers report to work on time and work through the end of their shifts. *Id.,* ¶4. McKenzie does not dispute that claim, but states that the time clocks in the location where he worked were inconveniently located making it difficult for him to clock in on time. Pl's 56.1 Stmt., ¶4. Estee Lauder has attendance and tardiness guidelines for non-exempt[2] employees and states that it routinely disciplines employees who violate those guidelines. Def's

---

[1] Where the plaintiff agrees with the defendant's recitation of facts, citation will be made only to the defendant's Rule 56.1 statement. Where the plaintiff disagrees, citation will be made to his statement or to both statements.

[2] Mr. McKenzie, who was paid by the hour, was a non-exempt employee pursuant to the Fair Labor Standards Act.

56.1 Stmt., ¶5. The guidelines provide that employees will be disciplined for excessive absenteeism, defined as eleven or more absences, eight latenesses, or a combination of thirteen absences and latenesses. *Id.*, Tursi Aff., Ex. A. The plaintiff claims that the Non-Exempt Attendance Guidelines was not in the Employment Guide given to him, and that he has never seen it before. Pl's 56.1 Stmt., ¶5.

On October 30, 2003, McKenzie injured his knee at work. Despite the injury, he continued to work as a flex material handler for three months before taking worker's compensation leave, which he took from January 22, 2004 to March 1, 2004. Def's 56.1 Stmt., ¶6. McKenzie says that the reason he continued to work after injuring himself was that Estee Lauder's doctor said that he was not injured and refused to order an MRI. McKenzie hired a lawyer and challenged that ruling, and cites that as the start of harassment and discriminatory treatment. Pl's 56.1 Stmt., ¶6.

Plaintiff returned to work on March 2, 2004 after his doctor cleared him to return in a "light duty" capacity, and he was assigned to an assembler position on the production floor. Def's 56.1 Stmt., ¶7. The plaintiff does not object to the accuracy of those facts, but suggests that he could and should have been assigned to a different position, as white workers had been. Pl's 56.1 Stmt., ¶7. The defendant claims that the assembler position was the only position in the Distribution and Production departments that did not require long periods of walking or standing, and that while the plaintiff worked as an assembler, they paid him at the higher rate of pay for material handlers and held his material handler job open for him. Def's 56.1 Stmt., ¶8. McKenzie disagrees, saying that there were other positions he could have been given, for example, "Carton 1 in Distribution," and that although he got his handler salary, he lost his night

3

shift pay differential and went from forty hours a week to thirty. Pl's 56.1 Stmt., ¶8.

The defendant reports that, on May 3, 2004, the plaintiff's physician released him for full duty and he was returned to his handler position. He never raised any issues with his knee injury again, and, according to Estee Lauder, it did not play a role in the discipline he received in 2005, which led to his termination in March 2007. Def's 56.1 Stmt., ¶9. In response to that statement, McKenzie writes, "I said they took my sick days which they never gave me back during my compensation period." Pl's 56.1 Stmt., ¶9.

By May 2005, the defendant asserts, McKenzie had used up all of his ten allotted sick days for calendar year 2005, citing to Inter-Office Correspondence to McKenzie. Def's 56.1 Stmt., ¶10; Tursi Aff., DE[25], Ex. B. The document notes that as of May 26, 2005, McKenzie had used all of his sick days for the year and warned that excessive absenteeism would be subject to disciplinary action. McKenzie states that he has never seen this document before. Pl's 56.1 Stmt., ¶10. According to the defendant, by August 2005, the plaintiff had used 13 sick days, had been late twice and had missed four scheduled overtime shifts during calendar year 2005. As a result, McKenzie was verbally counseled on August 31, 2005, with Estee Lauder making clear that failure to show improvement would result in further discipline, up to and including termination. Def's 56.1 Stmt., ¶11; Tursi Aff., Ex. C. McKenzie contends that the defendant has falsified records, annexing several exhibits which are examined *infra*. Pl's 56.1 Stmt., ¶11.

Over the next 18 months, the defendant states, the plaintiff received four subsequent warnings for time and attendance problems, including a formal warning in December 2005, a second formal warning in July 2006, a final formal warning in November 2006 and a second final formal warning in January 2007. Each of the warnings noted that failure to show

4

improvement would result in further discipline, up to and including termination. Def's 56.1 Stmt., ¶12; Tursi Aff., Exs. D,E,F and G. McKenzie makes a lengthy objection to this, asserting generally that the defendants falsified his records and did not follow their own guidelines in disciplining him, thus subjecting him to discriminatory treatment. Pl's 56.1 Stmt., ¶12.

During this same time period, Estee Lauder states that it disciplined McKenzie for violations of company policy other than lateness and absences, noting his failure to meet productivity standards, making of personal calls during work hours, napping in the shipping office and returning late after breaks. On several occasions, supervisors met with McKenzie to discuss these violations and added memoranda documenting the infractions to his employment file. In support of this claim, the defendant has presented copies of notes from the file, indicating that supervisor Anne Wagner warned McKenzie on several occasions that he would be "written up" if the violations did not stop. Def's 56.1 Stmt., ¶13; Tursi Aff., Ex. H. McKenzie states that he has never before seen the Wagner notes and that their inclusion in his record is another instance of falsification. Pl's 56.1 Stmt., ¶13.

In March 2007, Estee Lauder terminated McKenzie's employment effective March 8, 2007, for repeated time and attendance deficiencies. Tursi Aff., Ex. I. McKenzie states that he was fired on March 8, 2007 for being two minutes late, in violation of the defendant's own policies. Pl's 56.1 Stmt., ¶14. He also lists numerous alleged inaccuracies in Estee Lauder's calculations of his absences and latenesses and their complaints against him. *Id.*

On March 20, 2007, McKenzie filed a complaint with the NYSHRD charging the defendant with retaliation and unlawful discriminatory practice in employment based on age, race and disability. Tursi Aff., Ex. J. In a decision dated May 23, 2008, the NYSDHR dismissed the

complaint, finding that there was no probable cause. Tursi Aff., Ex. K. On November 13, 2008, the EEOC adopted the findings of the NYSHRD. Tursi Aff., Ex. L. McKenzie states that his complaint was dismissed and the dismissal adopted by the EEOC "because during that period of time I had moved and all of my mail was received to[o] late in order for me to respond to their inquiries." Pls. 56.1 Stmt., ¶¶15 & 16. In a letter submitted to the court after McKenzie's late-filed 56.1 statement, the defendants object, saying that the NYSDHR found "No Prabable Cause," a finding that was adopted by the EEOC. DE[37].

The defendant next addresses some of the specific allegations in the Complaint, stating that McKenzie was not wrongfully docked sick time when he reported late for scheduled overtime shifts, but was docked sick time when he failed to report for such shifts. Defs. 56.1 Stmt., ¶17. McKenzie says this is not true, and alleges falsification of records. Pls. 56.1 Stmt., ¶17. The defendants also deny that McKenzie was denied promotions or pay for training work. Although the plaintiff applied for a mechanic position on January 31, 2007, he was not eligible to post for positions at that time because he had received numerous formal warnings during the prior 15 months. Defs. 56.1 Stmt., ¶18, Tursi Aff., Ex. N. And, as to the claim that he was denied pay for training work, the defendants states that material handlers were, on occasion, expected to "buddy" with new employees to show them how to perform material handler functions and handlers are not paid extra or given a "trainer" title for performing these duties. McKenzie references alleged falsifications in his records to object to these claims. Pls. 56.1 Stmt., ¶18.

The parties also address alleged harassment by Joshua Klemann, one of McKenzie's supervisors. The Complaint alleges that Klemann "deliberately brushed [McKenzie's] face with

the bristles of a broom" while he was on a break. Compl., ¶10. The defendant states that Klemann found McKenzie asleep long after a scheduled break had ended, and that he "gently tickled Plaintiff's nose with a broom to wake him up and informed him that he needed to report back to work because the break had ended." Defs. 56.1 Stmt., ¶19. Klemann realized that he should not have woken McKenzie up in this manner, the defendant states, and immediately apologized for doing so. According to the defendant, McKenzie accepted the apology and never mentioned the incident to anyone at Estee Lauder. *Id.* McKenzie states that he was not sleeping on the job, but on his break and that Klemann never apologized to him and that touching anyone on the face with a dirty broom in the workplace is an act of discriminatory harassment. Pl's 56.1 Stmt., ¶19.

The final paragraph of the defendant's Rule 56.1 statement does not contain a statement of undisputed "fact,' but a claim that McKenzie has no evidence of discriminatory treatment to support a prima facie case or to show "satisfactory performance" or circumstances that give rise to an inference of discrimination. Def's 56.1 Stmt., ¶20. The defendant further states that the plaintiff has provided no documents in response to a document demand and allegedly admitted that his allegations are based on hearsay.

McKenzie counters those claims by listing several instances of alleged discriminatory behavior, including a claim that the defendant's company doctor told him there was nothing wrong with his knee and refused to authorize an MRI, that his time sheets and other records were falsified, and that Mr. Klemann brushed his face with a broom. Pl's 56.1 Stmt., ¶20. He also asserts that he lost the job he found after he was terminated from Estee Lauder because of "lack of work," and that he has collected unemployment benefits and attended a BOCES career change

7

program after that. *Id.*, ¶24. McKenzie also reiterates his claims regarding falsified time cards, with detailed references. *Id.*, ¶¶22-24. These claims are addressed *infra*.

## DISCUSSION

**Summary Judgment Standards:**

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). At this stage, the burden of proof is on the moving party to show that there is no genuine issue of material fact. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court must view all of the evidence "in the light most favorable" to the non-movant. *Breland-Starling v. Disney Publishing Worldwide*, 166 F. Supp.2d 826, 829 (S.D.N.Y. 2001)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In addition, the court must resolve all ambiguities and draw all inferences in favor of the party opposing the motion. *Ackerman v. National Financial Systems*, 81 F. Supp. 2d 434 (E.D.N.Y. 2000). Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *see Liberty Lobby*, 477 U.S. at 250.

In opposing the motion, the nonmoving party may not rely upon "mere conclusory

8

allegations, speculation, or conjecture." *Ackerman v. National Financial Systems*, 81 F. Supp. 2d 434, 436 (E.D.N.Y. 2000) (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)). However, "if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable." *Holt v. KMI Continental Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

The Second Circuit has indicated that trial courts should be wary of granting summary judgment in discrimination cases since intent and state of mind are typically at issue and direct evidence of discriminatory intent is rare. *Tarshis v. The Riese Organization*, 195 F. Supp. 2d 518, 523-24 (S.D.N.Y. 2002); *see also Holz v. Rockefeller & Co.,Inc.*, 258 F.3d 62, 69 (2d Cir. 2001). Nonetheless, cases involving allegations of workplace discrimination and harassment are still subject to summary judgment, and where the nonmovant fails to demonstrate a genuine issue of material fact, relief may be granted against such claims. *Holz,* 258 F.3d at 69.

**The Plaintiff's Claims:**

McKenzie has asserted claims of employment discrimination and retaliation under Title VII, the ADEA and the ADA. He claims that Estee Lauder unlawfully terminated his employment based on his race, his age, and his knee injury, and in retaliation apparently for his filing of a worker's compensation claim. He does not make any claims under state law. The defendant argues that he fails to raise any issue of material fact sufficient to withstand summary judgment on any of his claims.

**McKenzie's ADA Discrimination and Retaliation Claims:**

McKenzie describes the disability on which his claimed discrimination was based as the knee injury he suffered in October 2003. In his Verified Complaint to the NYSDHR, which he

9

annexed to his complaint in this action, he stated "During my employment, I was injured on the job and as a result, received Worker's Compensation. [Estee Lauder] contested my receipt of this benefit. I believe that due to the injury to my knee on the job and my receipt of compensation, [Estee Lauder] has discriminated against me." He specified that although he was given sick time following his injury, Estee Lauder penalized him for "use of sick time and subsequently issued write-ups for my use of sick time, [and] never requested documentation for my absences." DE[1], Verified Complaint, ¶¶3&4. He further alleged that he requested an accommodation and was not granted one, while, younger, white employees with disabilities were given accommodations. *Id.,* ¶5.

To establish a prima facie case of disability discrimination under the ADA, the plaintiff must prove: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See* 42 U.S.C. §12111, *et seq.*; *see also Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir. 1998). The defendant argues that McKenzie's injury is not, as a threshold issue, a disability recognized under the ADA, and the court agrees.

The Americans with Disabilities Act ("ADA") protects people with disabilities, defined as individuals with "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *See, e.g., Felix v. NYCTA,* 324 F.3d 102 (2d Cir. 2003). The CFR provides that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. App. 1630.2(j) (2010); *Pierre v. North Shore Univ. Hosp.,* 2010 U.S. Dist. LEXIS 43963, *25 (E.D.N.Y. Apr. 28, 2010)

("[T]emporary and moderate limitation does not constitute a disability under the ADA.); *O'Reilly v. Consolidated Edison Co. of N.Y., Inc.,* 374 F. Supp. 2d 278, 286 (E.D.N.Y. 2005). Here, McKenzie was injured in October 2003, worked for three months, then initiated an action against Estee Lauder that resulted in his taking Workers Compensation leave from January to March, 2004 and returned to work in a light duty capacity until May 2004, when he assumed his material handler job once again. The plaintiff does not appear to argue, in his papers in opposition to the motion, that his knee injury substantially limited one or more of his major life activities, thus qualifying as a disability under the ADA, and I find that it does not. Although McKenzie may have had a dispute with Estee Lauder regarding his entitlement to workers compensation benefits and he did not like the temporary light duty job he was assigned to, those facts do not rise to a the level of a viable ADA claim where the asserted disability is not an ADA disability. Further, ADA claims that accrued more than 300 days prior to a plaintiff's filing of an EEOC complaint are time-barred. *Benjamin v. Health and Hospitals Corp.,* 2009 WL 2959622, *6 (E.D.N.Y. Sept. 11, 2009). McKenzie was injured in October 2003, went out on worker's compensation leave from January to March 1, 2004 and returned to his material handlers position on March 2, 2004. He did not file an NYSDHR/EEOC claim until March 20, 2007. Thus, any claims arising prior to that time would be time barred.

Nor can he make out a retaliation claim under the ADA. To establish a *prima facie* case of retaliation, plaintiff must "adduce evidence sufficient to permit a rational trier of fact to find "(1) that he engaged in protected activity, (2) that defendant knew of the activity, (3) an adverse employment action took place, and (4) there exists a causal connection between the protected activity and the adverse employment action." *Kessler v. Westchester county Dep't of Social*

*Svces,* 461 F.3d 199, 206 (2d Cir. 2006) (internal citations omitted); *see also McMenemy v. City of Rochester,* 241 F.3d 279, 282-83 (2d Cir.2001).

It would appear that McKenzie intends the protected activity for his retaliation claim to stem from his Worker's Compensation claim in 2003/2004. His Verified Complaint to the NYSDHR, annexed to his Complaint in this action, states that during his employment, he "was injured on the job and as a result, received Worker's Compensation. [Estee Lauder] contested [his] receipt of this benefit." DE[1], NYSDHR Verified Complaint, ¶¶3 & 4. McKenzie also alleged that he believed that due to the injury to his knee on the job and his receipt of compensation, Estee Lauder discriminated against him. *Id.* He acknowledged that he was given sick time following his injury, but that he was penalized for the use of sick time. In its "Determination and Order After Investigation," the NYSDHR found that McKenzie alleged that Estee Lauder retaliated against him because he was out of work for 5 month[s] collecting worker's compensation and that eighteen months later when he volunteered to work overtime and did not show up the respondent retaliated by docking his sick time. DE[25], Tursi Aff., Ex. K, p. 2.

Given that the protected activity for retaliation purposes revolves around his knee injury and receipt of worker's compensation benefits over Estee Lauder's initial resistance to his entitlement to those benefits, the retaliation claims cannot succeed for several reasons. First, and as noted *supra*, McKenzie has no claim under the ADA because he does not have an ADA recognized disability. And, to the extent that he is alleging retaliation under the ADA for filing a worker's compensation claim, which appears to be the case, the court lacks jurisdiction to resolve such a claim. "A litigant seeking to raise such a claim is provided with a cause of action and an exclusive remedy to be adjudicated by the Workers' Compensation Board, as set forth in New

York Worker's Compensation Law.  *See Benjamin*, 2009 WL 2959622 at *7.

Thus, judgment should be entered in favor of the plaintiff on the ADA discrimination and retaliation claims.

**McKenzie's Employment Discrimination Claims Based on Race and Age:**

Claims of employment discrimination based on race or age must be addressed under the *McDonnell Douglas /Burdine* burden-shifting analysis.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Under the *McDonnell Douglas* test: (1) plaintiff must prove a *prima facie* case of discrimination; (2) defendants must then articulate a legitimate, non-discriminatory reason for plaintiff's dismissal; and (3) to prevail, plaintiff must prove that defendants' proffered reason was not their true reason, but rather a pretext for intentional, unlawful discrimination.  We turn to a consideration of those factors.

To establish a *prima facie* case of discrimination with regard to his termination, plaintiff must show that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties of his position; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).  Defendants argue that plaintiff cannot make out a *prima facie* case.  The court agrees, and need look no further than element four, that the alleged adverse employment actions - here, termination preceded by unwarranted warnings, unpaid training time, denial of promotions and falsified time records - occurred under circumstances giving rise to an inference of race or age based discrimination. Nowhere in McKenzie's papers, including the Complaint, the NYDHR complaint, his first

13

affidavit in opposition to the motion, his Rule 56.1 Statement, and his second affidavit in opposition to the motion, is there a single reference to anything that could possibly suggest race or age based discrimination. McKenzie merely alleges that he is black and over 40 and assumes that those factors must have entered into Estee Lauder's treatment of him. Such bare assertions are insufficient to make out a prima facie case.

"An employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate, non-discriminatory reason." *Shabat v. Blue Cross Blue Shield,* 925 F. Supp. 977, 988 (W.D.N.Y. 1996). To prove a discrimination claim, "plaintiff must do more than simply disagree with the defendant's business decisions." *Jimoh v. Ernst & Young,* 908 F. Supp. 220, 226 (S.D.N.Y. 1995). Plaintiff must proffer evidence that the adverse job actions she complains of were the result of discrimination. *Shabat,* 925 F. Supp. at 988.

Because the plaintiff has not shown a prima facie case of discrimination, the court need not even address the issue of whether Estee Lauder has established a non-discriminatory reason for McKenzie's termination. Nonetheless, to provide a complete record, I note that Estee Lauder has provided ample evidence of McKenzie's history of latenesses, absences and other problems, and the many warnings that were issued to him. *See* Tursi Affidavits and Exhibits annexed thereto, and *see* Factual Background, *supra*. McKenzie argues, implicitly, that these reasons are pretextual, relying on his analysis of time records and pay stubs as proof of falsification of the records. The specifics of his argument are difficult to follow at points, but analysis of the claims leads to the conclusion that the records were not falsified. McKenzie claims, for example, that company policy allowed an employee to charge absences and latenesses to vacation or sick time

without affecting performance evaluations, and that he was wrongfully denied the use of that option. DE[27], McKenzie Aff., ¶4. Thus, he reasons, his lateness on March 8, 2007, the day he was fired, should not have resulted in his termination. In support of that argument, he relies on the defendant's written policy in regard to Emergency Related Closings. *Id.*, Ex. A. There is nothing in the record, however, to suggest that there was an emergency related closing on March 8, 2007, or on any of the other days or pay periods that he references.

McKenzie also alleges that Estee Lauder forced him to use sick days instead of bereavement days on October 3 and 4, 2006 so that they would have a basis for issuing unwarranted warnings. Estee Lauder argues that it has no record of a request for bereavement days from McKenzie on those dates, and that he had already used the one annual bereavement day allowed to employees on September 29, 2006. *See* DE[31], Tursi Reply Aff., ¶5; DE[27], McKenzie Aff., ¶5. Further, the defendant argues, October 3 and 4 were flex days, on which McKenzie, a flex material handler, was not needed. DE[27], ¶5; DE[31], ¶6. Estee Lauder allows flex employees to be paid for days when they are not needed by using sick days, and that is what was done on October 3 and 4. The use of sick days in that way is not used in performance evaluations and the warnings issued to McKenzie after he used those days were not based on those days. DE[31], ¶6.

McKenzie also alleges that he was forced to use a sick day when Mary Ann Sobczak, an HR Representative, refused to allow him to work on November 6, 2006 after he arrived late. DE[27], ¶8. McKenzie claims that he had been given permission to arrive late on that day by his department manager, John Schneyder, but has provided no proof of that claim. Even assuming that it is true, however, a single incident such as the one described cannot rise to the level of an

15

inference of pretext. The remainder of McKenzie's allegations of falsification are based on unsupported assertions that similarly do not lead to an inference of pretext.

On this motion for summary judgment, the defendants must show that there are no issues of material fact that would bar entry of judgment on this issue in their favor, and no inferences to be drawn from the facts in the plaintiff's favor. They have done so. No reasonable finder of fact could find, on the record before the court, that McKenzie's firing was discriminatory based on race or age, and those claims should be dismissed.

**McKenzie's Title VII and ADEA Retaliation Claims:**

The law regardig retaliation claims is set forth *supra*, and includes the requirements that a plaintiff demonstrate that he engaged in protected activity and that there was a causal connection between that activity and adverse employment actions. To the extent that McKenzie is making retaliation claims under Title VII and the ADEA, there is no protected activity alleged. Volunteering to work overtime and then being docked sick pay for not showing up is not protected activity, and no rational juror could find it to be. Nor is there any basis for finding causation. A plaintiff can establish causation: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of other employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Benjamin,* 2009 WL 2959622 at *10 (quoting *Gordon v. New York City Bd. of Ed.,* 232 F.3d 111, 117 (2d Cir. 2000).

Here, McKenzie's EEOC filings came after he was terminated, so there can be no causal connection between the filing of those claims and any adverse employment actions. To the

extent that the filing for Worker's Compensation benefits in 2003-2004 is the alleged protected activity for the Title VII and ADEA claims, there is also a complete lack of any causal connection. The Worker's Compensation events occurred in late 2003 and early 2004, and the problems with lateness and absences that led to McKenzie's termination in 2007 did not begin until 2005. To establish causation through temporal proximity, the intervening period must be "very close," and that is not the case here. *See id.* (citing *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001). Thus, the retaliation claims must be dismissed.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the defendants by electronic filing on the date below. Defendant's counsel is directed to serve a copy of this Report on the pro se plaintiff by certified mail, return receipt requested, and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
September 22, 2010

                                                /s/ William D. Wall
                                                WILLIAM D. WALL
                                                United States Magistrate Judge